**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 11-107-JBC**

**KNC INVESTMENTS, LLC,** **PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**LANE'S END STALLIONS, INC.,** **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on Lane's End Stallions's amended motion to dismiss KNC Investments's amended complaint (R. 16) and KNC's cross-motion for partial summary judgment (R. 21). KNC is an Owner of a one-fortieth share in a thoroughbred stallion syndication agreement in Lemon Drop Kid managed by Lane's End Stallions. KNC seeks a declaratory judgment that it is entitled to copies of certain records, including the identities and contact information of other Owners, under the Syndicate Agreement and Kentucky law and asserts that Lane's End breached its fiduciary duties to KNC. The court will dismiss portions of the amended complaint and will grant summary judgment to Lane's End on the remaining claims.

KNC, acting through its agent Jerry Jamgotchian, purchased Share A05 in the Lemon Drop Kid Syndicate from the Share's previous Owner on February 28, 2011. In an email sent on March 2, 2011, Jamgotchian requested a time to review the books and records related to the Syndicate, and Lane's End indicated that they would be available for review at Lane's End's office. KNC's counsel also

sent a letter to Lane's End requesting copies of documents related to the Syndicate before noon on March 11, 2011. The letter also indicated that Jamgotchian and KNC's attorney and auditor would visit Lane's End on March 21, 2011, to inspect the books and records. The next day, Jamgotchian sent another email to Lane's End with seventeen additional requests for information. Lane's End's responses to these inquiries included financial information and information on the management of the Syndicate. Jamgotchian forwarded this information to others outside the Syndicate, including multiple racing-industry publications.

On March 10, 2011, Lane's End provided KNC with copies of the requested documentation for 2009 and 2010, including estimated statements of receipts and disbursements for the 2010 breeding season to date. Upon receipt of these documents, Jamgotchian objected that Lane's End had no right to redact the documents, claiming that all information regarding recipients of syndicate funds had been removed. Lane's End acknowledged that it redacted the names of other Owners in the information it sent to KNC. In reviewing the materials it received from Lane's End, KNC detected an early distribution to the Owner of Share A37 and accused Lane's End of wrongdoing and breaching its fiduciary duties. Lane's End also refused to release to KNC the identity of the Owner of Share A37, who had notified Lane's End of its intent to sell the Share. On March 13, KNC cancelled its appointment to inspect the books at Lane's End.

At this same time, KNC requested that Lane's End forward copies of their correspondence to the other Owners, and asked for a complete list of the other

2

Owners' names and contact information as well as a meeting of all Owners. On March 15, 2011, Lane's End sent each Owner a letter describing KNC's requests, and asked them to vote either yes or no to the release of their identities and contact information to KNC and to an in-person meeting. In the letter, Lane's End recommended that the Owners vote against both requests. Lane's End included a complete record of its email correspondence with Jamgotchian with each letter. Every Owner other than KNC voted against both requests, for a total vote of 39 to 1. *See* Affidavit of Thomas Hyams, R. 16 Exhibit A at ¶¶ 8-9 (May 3, 2011). Lane's End continues to redact documents to exclude the identity of other Owners from statements provided to KNC and cites this vote as its authority to do so.

In its complaint, KNC requests a declaratory judgment of its rights, asserts claims for breach of fiduciary duties, and requests an accounting. First, it claims under Count I that under the Syndicate Agreement it is entitled to receive "full, complete and unredacted" copies of the list of contact information for all Owners, the general ledger for the Syndicate, and the purchase offer for Share A37. KNC further asserts under Count I that Lane's End is without authority to poll Owners with regard to disclosure of their information to KNC and to recommend against such disclosure, and that Lane's End is without authority to advance Syndicate funds to any Owner. Under Count II, KNC asserts that it is also entitled to be furnished with the information it seeks under the Kentucky Business Corporations Act. KNC contends in Count III that Lane's End breached its fiduciary duties in polling the Owners and recommending against KNC's requests, in advancing

3

Syndicate funds to other Owners, and in refusing to provide KNC with the requested contact information for other Owners. Finally, under Count IV, KNC asks for a complete accounting of the books, records, and financial information of the Syndicate under the Syndicate Agreement and Kentucky Law.

Lane's End's refusal to release identity and contact information of Syndicate Owners to KNC was ratified by a majority of all Fractional Interests in accordance with the Syndicate Agreement; therefore, assuming the existence of such a duty, Lane's End did not breach its fiduciary duties to KNC by refusing to release the information, and KNC is not entitled to a declaratory judgment otherwise. Indeed, the other Owners who comprise the Syndicate voted unanimously against their identities and contact information being released to KNC—the single vote in favor of releasing the information was KNC's own. The Syndicate Agreement provides for actions by a vote of the majority of all Fractional Interests in section 6.1:

> The Syndicate Manager . . . or the Owners of 18 or more Fractional Interests may call a meeting of Owners . . . . Except as otherwise provided herein, a majority vote shall decide all questions properly submitted, provided a majority of all Fractional Interests is present in person or represented by proxy at such meeting. **Any action which may be taken at a meeting may be taken without a meeting if Owners of the required number of Fractional Interests vote by written instrument to do so.**

Lemon Drop Kid Syndicate Agreement, R. 4 Exhibit A at 9-10.

Because the Owners ratified Lane's End's conduct, the issues of whether the Syndicate Agreement contemplates confidentiality of Owners' identities, whether Lane's End had authority to poll the Owners as to whether they wanted their

4

contact information released, and whether Lane's End had authority to recommend a "no" vote are immaterial to determining the rights and obligations of the parties. *Cf. Weisbord/Etkin/Goldberg v. Gainesway Mgmt. Corp.*, No. 2007-CA-000280-MR, 2008 WL 820950 at *6 (Ky. Ct. App. Mar. 28, 2008) (citing *Whitesburg v. Whitesburg Water Co.*, 78 S.W.2d 330 (Ky. 1935)). Likewise, ratification removes the question of whether Lane's End violated any duties to KNC by withholding the other Owners' identities, because its doing so has been expressly approved by a majority vote of the Fractional Interests as provided in the Syndicate Agreement.

Lane's End has therefore complied with the Syndicate Agreement in the materials it has furnished to KNC, even though it redacted the documents to exclude identities of the Owners in those materials. KNC nonetheless asserts specifically that it has the right under sections 4.5 and 4.6 of the Syndicate Agreement to inspect the records of the Owners' identity and contact information should it make an in-person inspection of the books and records of account; however, that right is not present in the Syndicate Agreement, and it is appropriate for Lane's End to exclude the Owners' information from those records. Section 4.5 relevantly provides that

> [t]he Syndicate Manager shall keep books and records of account which shall accurately reflect all receipts and disbursements for and on behalf of the Owners. . . . The Syndicate Manager shall make available for inspection at its offices in Woodford County, Kentucky . . . the books and records of this syndicate to any Owner who so requests by seventy-two (72) hours written notice.

5

Syndicate Agreement at 5. The specific prohibition on releasing the Owners' identities and contact information, effectuated by the 39-to-1 vote, overrides the general language of section 4.5, which refers only to books and records without specifying exactly what records an Owner has a right to inspect. *See International Union of Operating Engineers v. J.A. Jones Const. Co.*, 240 S.W.2d 49, 56 (Ky.1951). Likewise, section 4.6 relevantly provides only that "[t]he Syndicate Manager shall maintain syndicate records indicating ownership of each Fractional Interest." Syndicate Agreement at 5. Section 4.6 does not provide Owners any specific right to be furnished with or to inspect the records of ownership. The ratification of Lane's End's actions by a majority vote of the Fractional Interests, as provided for in the Syndicate Agreement, eliminates all genuine disputes of material fact on the issues regarding Lane's End's refusal to release identity information to KNC. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Gainesway* at *6. Lane's End is therefore entitled to summary judgment on these issues.

Lane's End did not breach any fiduciary duties to KNC and other Owners by disbursing funds to the Owner of Share A37 earlier than was customary. The heart of this issue is whether "Syndicate funds" even exist—in other words, whether funds held by the Syndicate Manager are property of the Syndicate as a whole or property of the individual Owners of which the Manager is but a custodian. While the Syndicate Agreement does not directly address this issue, it supports the latter view. *See Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895

(Ky. 1992). Section 4.5 provides that the "Syndicate Manager shall keep books and records of account which shall accurately reflect all receipts and disbursements **for and on behalf of the Owners**." Syndicate Agreement at 5 (emphasis added). Section 4.8 similarly provides that the "Syndicate Manager shall **allocate to the account of each Owner** such Owner's proportionate share of receipts...." *Id*. at 6 (emphasis added). The Syndicate Agreement is constructed to provide each Owner with an individual account. It makes no such reference to funds being owned by the Syndicate in aggregate. Lane's End therefore has no duties to consult with or seek permission from other Owners before making a distribution to an Owner from that Owner's account, so long as that Owner's account is itself sufficiently funded to make the distribution. The Syndicate Agreement also does not address the timing of distributions of funds to Owners, and there is no evidence in the record of a majority of Fractional Interests having directed distributions to occur at a certain time. The issue of the timing of the distribution to the Owner of Share A37 is likewise therefore not an issue on which Lane's End has a duty to consult with or seek permission from other Owners.

KNC also asked for distribution of funds to be made earlier than Lane's End has customarily done. While the circumstances of the distribution to KNC are not similar enough to those of the distribution to the Owner of Share A37 to estop KNC from arguing the issue, the fact that KNC asked for and received a distribution earlier than those made in previous years to Owners of Syndicate Shares underlines the discretion of the Syndicate Manager to make such payments when it deems

them appropriate. Neither the Syndicate Agreement nor general agency principles provides authority for KNC's position that Lane's End should have polled the Owners before making an early distribution of any kind. Finally, KNC's assertions that the early distribution to the Owner of Share A37 suggests some sort of wrongdoing are not sufficient to create a genuine dispute of material fact where none otherwise exists because KNC has failed to provide even a scintilla of evidence that supports its allegations beyond the existence of the early distribution itself. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment for Lane's End on this issue, and therefore on the entirety of Counts I and III, is appropriate.

Counts II and IV of the amended complaint, in which KNC requests a declaratory judgment under the Kentucky Business Corporations Act and an accounting, fail to state claims upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Count II fails because the Lemon Drop Kid Syndicate is not a corporation. KNC asserts that the Syndicate is "akin to a corporate entity" because each member owns shares in Lemon Drop Kid, and therefore is governed by the KBCA, KRS § 271B.01-010 et seq. On that basis, KNC asserts that KRS § 271B.16-020 requires that Lane's End provide the "full, complete and unredacted" information it has requested; however, by its terms, KRS § 271B.16-020 applies solely to corporations. The statute provides in relevant part as follows:

> A shareholder of a corporation shall be entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation . . . if he gives the corporation

> written notice of his demand at least five (5) business days before the
> date on which he wishes to inspect and copy.

KY. REV. STAT. ANN. § 271B.16-020(1). KNC argues that the court should apply the KCBA "as an aid in interpreting the appropriate meaning of the LDK Syndicate Agreement," and maintained at oral argument that the KBCA provides grounds for the court to bypass the Syndicate Agreement's on-premises inspection requirement. KNC has provided no support for the KBCA's having ever been judicially applied in such a manner and does not argue that Kentucky courts would be receptive to such an extension of Kentucky law. No justification exists to extend Kentucky law that by its own terms is strictly limited to corporations to non-corporate entities such as the LDK Syndicate. Even if this court were to apply the KBCA to the facts as KNC has asserted them, *see Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993), KNC would not be entitled to the declaratory judgment it seeks. KNC argues that is it "entitled to receive" the business records it seeks under the KBCA. KRS § 271B.16-020 gives a shareholder the right to "inspect and copy" records at "the corporation's principal office." Accordingly, because Count II of the amended complaint does not state a claim to relief that is plausible on its face, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), it will be dismissed.

Count IV, which requests an accounting, fails to state a claim upon which relief can be granted because KNC's rights are governed by the Syndicate Agreement. The Syndicate Agreement does not require the Syndicate Manager to

provide a full and complete accounting upon request. It addresses the Syndicate Manager's responsibilities regarding production of records in section 4.5:

> The Syndicate Manager shall keep books and records of account which shall accurately reflect all receipts and disbursements for an on behalf of the Owners. The Syndicate Manager **shall furnish to each Owner a statement reflecting the receipts and disbursements by and on behalf of the syndicate, which statement shall be included with each quarterly statement for expenses**. The Syndicate Manager **shall furnish to each Owner, as soon as practical after the end of each breeding season, a statement showing the results of the breeding season**. The Syndicate Manager **shall make available for inspection at its offices** in Woodford County, Kentucky or at the premises where LEMON DROP KID is kept on any business day between the hours of 10:00 a.m. and 4:00 p.m., local time, the books and records of this syndicate to any Owner who so requests by seventy-two (72) hours written notice.

Syndicate Agreement at 5. It provides that each Owner is entitled to be furnished with periodic statements and annual statements showing the results of the breeding season. It also provides that if an Owner wishes to inspect other books and records of the Syndicate, it may do so by appointment at the offices of Lane's End or at the premises where the stallion is kept. The Syndicate Agreement does not provide that an Owner is entitled to be furnished with a general accounting upon request. This aspect of the relationship between the parties is squarely governed by the Syndicate Agreement and KNC's arguments otherwise, for instance, that Lane's End should be subject to a general openness requirement, do not provide a viable legal theory for relief. *See In re DeLorean* at 1240. Dismissal of Count IV is warranted under Fed. R. Civ. P. 12(b)(6).

Accordingly,

10

**IT IS ORDERED** that Lane's End's motion (R. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that KNC's motion (R. 21) is **DENIED**.

A separate judgment will issue.

Signed on November 10, 2011

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY